IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jeffory A. Smith, :
        Plaintiff : Civil Action 2:11-cv-00002

v. : Judge Graham

Michael J. Astrue, : Magistrate Judge Abel
Commissioner of Social Security,
        Defendant :

### REPORT AND RECOMMENDATION

Plaintiff Jeffory A. Smith brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The Commissioner failed to request medical records from his primary care physician for the appropriate time frame;
- The evidence of record demonstrates that plaintiff is disabled; and,
- The administrative law judge erred when he failed to adopt the opinion of Melissa Hunt.

**Procedural History.** Plaintiff Jeffory A. Smith filed his application for disability insurance benefits on November 7, 2006, alleging that he became disabled on January 1, 2001, at age 45, by scales disease, recent heart attack and nervous breakdown. (R. 98, 115.) The application was denied initially and upon reconsideration. Plaintiff sought a

*de novo* hearing before an administrative law judge. On May 22, 2009, an administrative law judge held a hearing at which plaintiff, proceeding *pro se*, appeared and testified. (R.19.) A vocational expert and also testified. On August 4, 2009, the administrative law judge issued a decision finding that Smith was not disabled within the meaning of the Act. (R. 18.) On November 18, 2010, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Smith was born September 14, 1955. (R. 98.) He completed the eleventh grade. (R. 121.) He has worked as a construction worker, dock worker and in inventory control. He last worked May 31, 2006. (R. 115.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Smith's testimony as follows:

> Claimant testified that he had stopped working back in 2000 due to pain in his back, neck, and feet that made it hard to stand. He said that [he] had injured his back in the 1980s and his back and neck had hurt ever since. He took Percocet but it did not relieve his pain. It did help him sleep. He took Soma for spasms in his hips. He had undergone physical therapy and chiropractor treatment back in the 1980s but more recently had only been treated with medications.
>
> Claimant also said that he suffered from depression. His only counseling had been around 1996 and 1997. He had received counseling from his family doctor and had taken Paxil then. He said he was treated with Zyprexa in 2002 after he had a nervous breakdown. He currently took Cymbalta. He said he stayed in bed a lot due to lack of energy and had mood swings.
>
> Claimant, who lives with his wife, said that he spent a typical day trying to inspire family members to do things. He also took short walks. He did

2

>no homework or shopping himself. He went to church but rarely. He did drive his car two or three times a week. He used a riding mower to mow the yard; he did it in two fifteen minutes spurts. He slept up to three or four hours during the day and two to three hours at night.
>
>Claimant estimated that he could walk 1500 yards, stand thirty to forty minutes, and sit fifteen minutes at a time. He could stand longer back in 2000. He could only lift five pounds now but back in 2000 he could could fifty to sixty pounds up to waist level. He said he felt entitled to Social Security as he had paid into the system.
>
>Mrs. Katrina Smith, claimant's wife, said that claimant suffered from manic depression. He got very paranoid and violent at times. Sometimes he told her not to sit at the kitchen table because someone was looking into the window. These episodes lasted from one day to three weeks. He had such episodes when he was working. He had been under a lot of stress at work.

(R. 14-15.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

<u>Martin Markus, M.D.</u> On October 25, 1999, Dr. Markus treated plaintiff for an upper respiratory infection. In March 2000, plaintiff complained of intermittent muscle spasms in his back. Dr. Markus prescribed Paxil. In July 2000, plaintiff was seen by Dr. Markus to obtain a refill of his medication. Dr. Markus diagnosed hypertension and prescribed Vasotec. (R. 233.) In September 2000, plaintiff complained of having headaches, vertigo and a sore throat. (R. 232.)

In February 2001, Dr. Markus noted that plaintiff was diagnosed with hypertension and refilled his prescriptions. Plaintiff returned in May 2001 to refill his medications. (R. 232.)

On March 21, 2003, plaintiff complained of not feeling well and being depressed. On May 30, 2003, plaintiff was seen for refills. (R. 231.) In February and March 2004, plaintiff was seen for refills. (R. 230.) In March and July 2004, plaintiff was seen for an ingrown toenail. (R. 229.) On March 29, 2005, plaintiff complained of back pain. On June 21, 2005, plaintiff complained of an ingrown toenail. (R. 228.) In April and May 2006, plaintiff complained of an ingrown toenail. (R. 227.) In July and October 2006, plaintiff complained of back pain. (R. 226.)

<u>Won G. Song, M.D.</u> On April 6, 2005, Dr. Song, an orthopedic surgeon, examined plaintiff. On physical examination, plaintiff walked with a mild antalgic gait on both knees. There was moderate pain and tenderness at the lower lumbosacral area with paraspinal muscle spasms. Range of motion in the low back showed flexion 40 degrees and zero extension. Straight leg raising was positive around 30 degrees on both sides. Toe and heel standing was fair. Deep tendon reflexes were decreased on his knees and ankles. Both knees were slightly swollen with effusion. There was some coarse grinding sensation during rage of motion. There was questionable weakness of the extensor hallux longus on both sides. Dr. Song diagnosed anklyosing spondylitis with degenerative arthritis of both knees. (R. 186.)

April 6, 2005 x-ray of plaintiff's lumbar spine showed multi-level degenerative disc disease and facet arthropathy. X-rays of his knees showed slight narrowing of the medial joint space compartment with small joint effusion and enthesophyte on the superior aspect of the patella. (R. 189).

An April 11, 2005 MRI of plaintiff's lumbar spine showed a disc bulge and degenerative spur, left greater than right, with mild neuroforaminal stenosis and bilateral facet degenerative change at the L5-S1 level. (R. 185.)

<u>Vinay K. Chitkara, M.D.</u> On May 9, 2006, plaintiff presented at the hospital with complaints of chest pressure. The pressure was not alleviated with nitroglycerin. He underwent a heart catheterization which showed that he a completely occluded proximal LCX vessel. He had a stent placed.  (R. 194-95.)

<u>Arthur Filiatraut, M.D.</u> On October 18, 2006, plaintiff underwent x-rays of the cervical, dorsal and lumbar spine. His cervical spine had calcification in the anterior ligament raising the question of disseminated idiopathic skeletal hyperostosis. There was poor demonstration of body C7. There was some degenerative change of facet joints. There were calcifications in the soft tissues on either side of the mid-cervical spine, most likely in the carotid arteries. The dorsal spine had calcification in the anterior ligament. There was slight demineralization, but no significant compressions were present. The lumbar spine had calcifications in the anterior ligaments with anterior osteophytes. Disc spaces were fairly well maintained. The posterior elements

appeared intact. Dr. Filiatraut noted that it was likely there was disseminated idiopathic skeletal hyperostosis and spondylitis. (R. 221.)

<u>Thomas D. Skeels, D.O.</u> On October 18, 2006, plaintiff underwent a electromyographic examination that revealed no denervation or motor unit loss. Nerve conduction studies were normal. Plaintiff had lumbar paraspinal guarding/spasm in the L3 through S1 areas. (R. 225.)

In a November 1, 2006 letter, Dr. Skeels noted that plaintiff reported significant neck, upper and lower back pain and bilateral leg pain mostly in his knees. He had increased pain with walking, sitting, and lying supine. He had difficulty sleeping and experienced daily morning stiffness. He had generalized weakness. On a scale of zero to ten, his average daily pain was a seven. On physical examination, range of motion of the lumbar spine was decreased markedly. Forward flexion was 30 degrees, and extension was 5 degrees. Side bending was 10 degrees bilaterally. Pain was noted at all endpoints of range of motion. Cervical range of motion was also markedly decreased. Forward flexion was 25 degrees, extension was 10 degrees, and side bending was 5 degrees bilaterally. Rotation to the right was 50 degrees. Rotation to the left was 45 degrees. Dr. Skeels diagnosed disseminated idiopathic skeletal hyperostosis. (R. 234-37.)

Plaintiff submitted an information sheet for antibiotics that were prescribed to him on July 2, 2007. He reports that his back gave out and he fell on a utility trailer. He received seven stitches in his buttocks. (R. 259.)

Shahdida Aziz, M.D. Plaintiff submitted treatment notes from July 25, 2007 and August 27, 2007.  (R. 261-70.)

On July 31, 2007, plaintiff underwent a CT scan of the lumbosacral spine with multi-planar reconstruction without contrast which multi-level degenerative disc/joint disease. Evaluation of the thecal sac was limited. There was mild narrowing of the central canal at L2-3 through L4-5 secondary to degenerative changes superimposed upon a borderline congenitally small canal. There were no acute findings. (R. 296-97.)

Vasantha K. Kumar, M.D. In a September 25, 2007 letter, Dr. Kumar, a pain specialist, noted that plaintiff had had chronic pain for more than 25 years. Plaintiff reported the pain was the result of a fall in 1981. He had pain in his lower back, mid-back, and neck. The pain was constant, episodically worse, and achy. There was no radiation into his arms or legs. Dr. Kumar opined that plaintiff's chronic back pain was possibly secondary to early ankylosing spondylitis and skeletal hyperostosis.  (R. 274-75.)

**Psychological Impairments.**

Madison County Hospital. On April 15, 2002, Smith presented at the emergency department with complaints of being depressed and being unable to sleep for the past three days. (R. 166-72.)

Mental Health Services for Clark County, Inc. Plaintiff was treated at Mental Health Services for Clark County, Inc. From May 13, 2002 through September 6, 2002. Plaintiff's depression was alleviated. He was diagnosed with major depression, single

7

incident, severe with psychosis in remission and dysthymic disorder. He was assigned a GAF score of 60.  (R. 370-76.)

<u>Michael Wagner, Ph.D.</u> On February 1, 2007, Dr. Wagner completed a psychiatric review technique for the time period from January 1, 2001 through December 31, 2001. Dr. Wagner indicated that there was insufficient evidence for depression. (R. 243-55.) On April 25, 2007, Caroline Lewin, Ph.D. reviewed the evidence and affirmed the February 1, 2007 psychiatric review technique. (R. 257.)

<u>George O. Schultz, Ph.D.</u> On June 29, 2009, Dr. Schultz, a clinical psychologist, evaluated plaintiff. Plaintiff reported that he received counseling in 2002 for depression. On mental status examination, his affect was appropriate and congruent. His mood was euthymic. There were physiological correlates related to affect and mood. He denied suicidal or homicidal ideation. He slept only two to three hours per night because of pain. He had difficulty falling asleep and difficulty getting up in the mornings. He reported feeling anxious, depressed, worthless, and helpless. He had difficulty concentrating. He had heartburn and diarrhea. Dr. Schultz diagnosed depressive disorder not otherwise specified. He assigned a current Global Assessment of Functioning ("GAF") score of 58.  Dr. Schultz opined that plaintiff's ability to relate to others, including fellow workers and supervisors, was not impaired. His ability to understand, remember, and follow instructions was not impaired.  His ability to maintain attention, concentration, and to perform simple repetitive tasks with adequate

8

pace and perseverance was not impaired. His ability to withstand the stress and pressures associated with day-to-day work activity was mildly impaired. (R. 283-88.)

<u>Meleesa A. Hunt, Ph.D.</u> On September 8, 2009, Dr. Hunt, a psychologist, examined plaintiff. Plaintiff reported that he was hospitalized in 2002 for a nervous breakdown. He was prescribed Zyprexa until 2007 or 2008. Dr. Hunt diagnosed depressive disorder not otherwise specified and paranoid personality disorder. Dr. Hunt also gave rule out a diagnosis of schizophrenia paranoid type, episodic with interepisode residual symptoms. She assigned a GAF score of 55-60. (R. 302-

**Administrative Law Judge's Findings.**

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2001.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2001 through his date last insured of December 31. 2001 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following medically determinable impairment: depressive disorder NOS (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment of combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2991, the alleged onset date, through December 31, 2001, the date last insured (20 CFR 404.1520(c)).

(R. 15-17.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The Commissioner failed to request medical records from his primary care physician for the appropriate time frame.

- The evidence of record demonstrates that plaintiff is disabled.

- The administrative law judge erred when he failed to adopt the opinion of Melissa Hunt.

**Analysis.**  Plaintiff argues that the Commissioner failed to request medical records from his primary care physician for the appropriate time frame and that the evidence of record demonstrate that he is disabled. Although plaintiff testified at the hearing that his primary care physician had died, the evidence of record contains treatment notes from Dr. Markus. Plaintiff has not identified what further records he believes are missing. The only medical evidence of record concerning the period January 1, 2001 through December 31, 2001 consisted of treatment notices from Dr. Markus, plaintiff's primary care physician. These notes indicate that Dr. Markus treated plaintiff for depression and hypertension. The administrative law judge properly considered the evidence of record and examined the medical records beyond plaintiff's last insured date. He determined that the records did not demonstrate any significant condition that would relate back to the relevant time frame:

> Claimant's date last insured is December 2001. The only medical evidence of record related to the period in issue (January 1, 2001 through December 31, 2001) are a few, sparse notes by a primary care source, Dr. Markus (Exhibit 7F). These show that he prescribed Paxil for depression per note in May 2001 (Exhibit 7F at 11). There was no discussion about depression or doctor observations. A review of the records before and after that date does not show such details either.
>
> Post hearing, the claimant was referred for a psychological evaluation. This was performed by George Schulz, Ph.D., in June 2009 (Exhibit 24F). The claimant reported that he completed the 10th grade in regular classes. He left school to work. Mental status exam showed no significant abnormalities including no overt signs of depression or anxiety, and

11

> cognitive testing was adequate. He concluded that the claimant had no limitation in social or cognitive functioning for work and only mild limitation in stress tolerance for work.
>
> The claimant told Dr. Schulz that he was hospitalized for a nervous breakdown for a week in 2002. The record shows claimant went to the emergency room in April 2002 for complaint of depression. Nothing acute is indicated at that time, and he was referred to mental health services without evidence that he followed up for treatment (Exhibit 1F). In any event, this event occurred a few months after the date last insured.
>
> The rest of the evidence in the record pertains to back problems beginning in 2005. An MRI showed disc bulge at level L5-S1 of the lumbar spine with degenerative spurring and "mild" stenosis and facet changes (Exhibit 3F at 5). X-rays the same month showed "mild" osteoarthritis in both knees (Exhibit 3F). The claimant saw his family doctor once in 2001 for back spasm and there was not mention of any back complaints again until March 2005 (Exhibit 7F). An EMG of the legs in October 2006 was normal (Exhibit 7F at 4). He has had minimal treatment for the condition. There is nothing in the records after 2001 that would relate back to the period in issue that shows any significant lumbar spine impairment.
>
> The claimant had chest pain complaints in 2006. Catheterization showed total occulsion of a circumflex artery but, otherwise, only mild findings with regard to the right coronary artery (Exhibit 4F). Stent placement was done at that time for the circumflex artery. There is no evidence of any cardiac problems or complaints during 2001. The evidence just cited does not show any significant condition that would related back to the period in issue.

(R. 16-17.) Although plaintiff submitted additional medical records to the Appeals Council, none of the additional records related to the relevant time period. Moreover, plaintiff has not requested or demonstrated that remand is appropriate based on new material evidence. Much of what plaintiff submitted to the Appeals Council was already in the record. Additionally, the administrative law judge discussed the incidents discussed in the records submitted to the Appeals Council, including

12

plaintiff's April 2002 hospitalization and diagnostic testing from 2005 and 2006. The administrative law judge's decision is supported by substantial evidence.

Plaintiff further argues that the administrative law judge should have adopted the opinion of psychologist Dr. Hunt. The administrative law judge was not required to adopt the conclusions of Dr. Hunt. Dr. Hunt examined plaintiff 2009, well after plaintiff's last insured date. Her opinion provides no insight into the status of plaintiff's mental condition in 2001.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

    s/Mark R.  Abel
United States Magistrate Judge